UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ORA TABRON,                )
                           )
    Plaintiff,             )
                           )
    v.                     )    Civil Case No. 12-1252 (RJL)
                           )
JEH JOHNSON, Secretary,[1] )    FILED
Department of Homeland Security, )
                           )    MAR 05 2014
    Defendant.             )
                           )    Clerk, U.S. District & Bankruptcy
                                Courts for the District of Columbia

MEMORANDUM OPINION
(February 27, 2014) [Dkt. #19]

Plaintiff Ora Tabron ("Tabron" or "plaintiff") brings this action against her employer, Jeh Johnson, Secretary of the United States Department of Homeland Security ("DHS" or "defendant"), alleging discrimination on the basis of her race and color in violation of Title VII of the Civil Rights Act of 1964. *See* Compl. [Dkt. #1]. Now before the Court is defendant's Motion for Summary Judgment ("Def.'s Mot.") [Dkt. #19]. Upon consideration of the parties' pleadings, relevant law, and the entire record in this case, the defendant's Motion for Summary Judgment is GRANTED.

BACKGROUND

This case involves a challenge to defendant's non-selection of Tabron—an African-American woman of dark complexion—for promotion to the position of Director

---

[1] On December 23, 2013, Mr. Johnson succeeded Acting Secretary, Rand Beers as the United States Secretary of the Department of Homeland Security. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, his substitution here is appropriate.

1

of Operations, Regulatory Audit, Office of International Trade ("Director of Operations" or "position in question"). *See* Compl at ¶¶ 6, 12. Plaintiff alleges that the defendant passed her over for promotion due to her race and color, in favor of a less qualified candidate who is not African-American. *See id.* at ¶¶ 18-22.

Tabron began working for Customs and Border Protection ("CBP")—a component of DHS—and U.S. Customs Service before that, in approximately 1985 and rejoined the agency in approximately1996, following a period of work in the private sector. *See* Def.'s Mot. at ¶ 2; Pl.'s Opp'n at ¶¶ 1-2 [Dkt. #21]. Throughout her career, plaintiff always worked in Washington, D.C. *See* Ex. 2 to Def.'s Mot. at 15:10 [Dkt. #19-1]. From September, 2003 to July, 2010, plaintiff held the supervisory position of Director, Quality Assurance Division. *See* Compl. at ¶¶ 6-7; Def.'s Mot. at ¶ 1. In April, 2010, CBP created the Director of Operations position when it combined the responsibilities of two previous positions, Field Oversight East and Field Oversight West. *See* Def.'s Mot. at ¶ 5; Pl.'s Opp'n at ¶¶ 7-8. In July 2010, CBP temporarily detailed plaintiff to serve in the Director of Operations position. *See* Compl. at ¶ 7.

Desiring to fill the position on a permanent basis, CBP issued a Vacancy Announcement for the Director of Operations position ("Announcement") on or about July 22, 2010. *See* Def.'s Mot. at ¶ 6. The Announcement listed the "Major Duties" of the position as including, *inter alia*, directing the office "responsible for providing oversight guidance over the daily operational and administrative activities of all the Regulatory Audit Field Offices." *See* Ex. 6 to Def.'s Mot. at 223 [Dkt. #19-2]. The Announcement period was scheduled to remain open from July 22 through August 4,

2

2010. *See* Def.'s Mot. at ¶ 6. Plaintiff submitted her completed application for permanent placement in the position prior to the August 4, 2010 deadline. *See* Compl. at ¶¶ 8-9; Def.'s Mot. at ¶ 2. However, due to the failure of otherwise qualified candidates to submit all required documentation, CBP human resources extended the deadline, informing all applicants on September 10, 2010 that they were free to supplement their applications with any additional documentation on or before September 17, 2010. *See* Compl. at ¶ 11; Def.'s Mot. at ¶¶ 7-9.

Plaintiff later interviewed with James Madden and R. Keith Richard—the interview panel for the Director of Operations position—after which they considered her to be one of the top two candidates for the job. *See* Def.'s Mot. at ¶ 11. Nevertheless, on December 8, 2010, Cindy Covell ("Covell")—the recommending official for the position—recommended Caridad Reyes ("Reyes"),[2] a Filipino woman, for the Director of Operations position to the selecting official, Daniel Baldwin ("Baldwin").[3] *See* Def.'s Mot. at ¶ 15; Compl. at ¶ 12. Reyes previously served in CBP's Long Beach, California field office as a Senior Auditor and Team Leader from August 2004 to March 2007, and as an Assistant Field Director from March 2007 to December 2008. *See* Ex. 16 to Def.'s Mot. at 366-67 [Dkt. #19-4]. Baldwin selected Reyes for the position in question on

---

[2] Reyes was one of two candidates for the Director of Operations position whose applications were initially ruled incomplete for failure to include required undergraduate transcripts. *See* Def.'s Mot. at ¶ 7. Although she was initially rated as ineligible for the position, Reyes supplemented her application with the required documents on September 16, 2010, and was thus able to advance to the interview stage of the application process. *See id.* at ¶¶ 7, 9-10.

[3] As of July, 2013, Baldwin was the Executive Director, Cargo and Conveyance Security, Office of Field Operations, CBP, and had been in that position since March, 2011. *See* Def.'s Mot. at ¶ 4.

December 14, 2010, and Covell announced the selection three days later. *See* Def.'s Mot. at ¶ 16.

## STANDARD OF REVIEW

Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. Summary judgment is proper where the pleadings, stipulations, affidavits, and admissions in a case show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether summary judgment for the employer is appropriate in a Title VII case, the court "considers all relevant evidence presented by the plaintiff and the defendant." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 495 (D.C. Cir. 2008). The court must accept as true the evidence of, and draw "all justifiable inferences" in favor of the party opposing summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

## ANALYSIS

Claims of employment discrimination lacking direct evidence of the alleged discrimination are analyzed under the three-part burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See id.* at 802; *see also Chappell-Johnson v. Powell*, 440 F.3d 484, 487 (D.C. Cir. 2006). Under the *McDonnell Douglas* burden-shifting framework, a plaintiff must first establish a prima facie case of racial discrimination. *McDonnell Douglas*, 411 U.S. at 802; *see also Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). A plaintiff may establish a prima facie

4

case by showing "(i) that [she] belongs to a racial minority; (ii) that [she] applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite [her] qualifications, [she] was rejected; and (iv) that, after [her] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas*, 411 U.S. at 802; *see also Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004).

If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the plaintiff's non-selection. *See McDonnell Douglas*, 411 U.S. at 802; *Ford v. Mabus*, 629 F.3d 198, 201 (D.C. Cir. 2010). Deference is due to agency personnel decisions, and thus, whether an employer's proffered non-discriminatory reason is "legitimate" is a relatively lenient standard. *See Fischbach v. D.C. Dep't of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (A court "may not second-guess an employer's personnel decision absent demonstrably discriminatory motive.") (quoting *Milton v. Weinberger*, 696 F.2d 94, 100 (D.C. Cir. 1982). If the employer meets this burden of production, the burden will then shift to the plaintiff to show that the employer's proffered reason for the non-selection was not the actual reason, but that it was, in fact, a pretext for racial discrimination. *See McDonnell Douglas*, 411 U.S. at 802; *see also Burdine*, 450 U.S. at 254 (defendant's burden is one of production, not of persuasion).

Despite this longstanding framework, our Circuit has been very clear that once an employer has asserted a legitimate non-discriminatory reason for a non-selection in a Title VII case, the "district court need not—*and should not*—decide whether the plaintiff

actually made out a prima facie case under *McDonnell Douglas*." *Brady*, 520 F.3d at 494 (emphasis in original); *see also U.S. Postal Serv. Bd. Of Governors v. Aikens*, 460 U.S. 711, 715 (1983) ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether the defendant intentionally discriminated against the plaintiff.") (internal quotations and citation omitted). Rather, the inquiry should turn to the third step of the *McDonnell Douglas* framework to determine whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin." *Brady*, 520 F.3d at 494 (citations omitted).

Unfortunately for the plaintiff, there is no doubt that defendant has met this burden. How so? The defendant has asserted a *legitimate* non-discriminatory reason for Tabron's non-selection: Reyes was a "stronger candidate" than plaintiff and a better fit for the Director of Operations position. Ex. 3 to Def.'s Mot. at 137 [Dkt. #19-1]. Specifically, Reyes was selected because of her "experience conducting field regulatory audits both as an auditor and a supervisory auditor, her expertise in specific audit subject matter areas, her ability to get along with others, and her ability to handle stress." Def.'s Mot. at 5; *see also* Ex. 4 to Def.'s Mot. at 192:1-193:4 [Dkt. #19-2]. Meanwhile, regarding the plaintiff, Covell observed that,

> Ms. Tabron is not known as a field audit expert on complex audit issues that would allow her to effectively brief foreign government auditors or Congressional staffers on complex audit issues. Ms. Tabron does not have working relationships with the other parts of CBP nor DHS that are vital for having as the Operations Director. Ms. Tabron does not seek challenging assignments (on her own initiative) outside of her comfort zone nor does she volunteer to lead National International Trade efforts. Ms. Tabron does not demonstrate the ability to handle stressful situations in a tactful and diplomatic manner, and she does not excel at listening to opposing views and working out solutions.

Ex. 3 to Def.'s Mot. at 138-39. Put simply, defendant's proffered reasons for its selection of Reyes over Tabron for the Director of Operations position are both non-discriminatory and legitimate.

In response to defendant's asserted non-discriminatory reasons for her non-selection, Tabron attempts to show that those reasons are pretext for discrimination by arguing that Reyes was "pre-selected" for the position in violation of CBP hiring policies. *See* Pl.'s Opp'n at ¶¶ 15-29; Ex. F to Pl.'s Opp'n [Dkt. #21-2]. However, plaintiff has failed to produce any actual evidence that Reyes's "pre-selection" was in any way motivated by racial discrimination. Indeed, mere departure from established hiring practices does not equate to evidence of illegal racial discrimination. *See Oliver-Simon v. Nicholson*, 384 F. Supp. 2d 298, 312-13 (D.D.C. 2005) ("Even if a court suspects that a job applicant was victimized by poor selection procedures it may not second-guess an employer's personnel decision absent demonstrably discriminatory motive.") (internal quotations and citation omitted). Plaintiff's argument that defendant's proffered non-discriminatory reasons are pretext for racial discrimination are made more implausible given that Covell—the very individual whom plaintiff claims discriminated against her

7

on the basis of her race and color in this case—was the one who had recommended the plaintiff for promotion to the Director of Quality Assurance position in 2003. *See* Def.'s Mot. at 2; Pl.'s Opp'n at ¶ 63.

Thus, plaintiff's claim of race and color-based employment discrimination fails because she is unable to produce any evidence that would allow a reasonable jury to conclude that CBP's asserted non-discriminatory reasons for plaintiff's non-selection were not the actual reasons, and that Covell and others intentionally discriminated against her on the basis of her race and color.

## CONCLUSION

Accordingly, for all of the foregoing reasons, the Court GRANTS defendant's Motion for Summary Judgment. An Order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge

8